# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
Filed: March 31, 2017
No. 14-766V

| | | |
|---|---|---|
| * * * * * * * * * * * * * * | * | |
| JOAN ROSOF, | * | |
| | * | UNPUBLISHED |
| | * | |
| Petitioner, | * | Chief Special Master Dorsey |
| | * | |
| v. | * | Attorneys' Fees and Costs; |
| | * | Non-Reimbursable Administrative Tasks; |
| SECRETARY OF HEALTH | * | Adjustment of Expert's Hourly Rate; |
| AND HUMAN SERVICES, | * | Petitioner's Out-of-Pocket Costs. |
| | * | |
| Respondent. | * | |
| * * * * * * * * * * * * * * | * | |

Lisa Annette Roquemore, Law Office of Lisa A. Roquemore, Rancho Santa Margarita, CA, for petitioner.
Gordon Elliott Shemin, U.S. Department of Justice, Washington, DC, for respondent.

### DECISION AWARDING FEES AND COSTS[1]

On August 22, 2014, Joan Rosof ("petitioner") filed a petition pursuant to the National Vaccine Injury Compensation Program.[2] 42 U.S.C. §§ 300aa-1 to 34 (2012). Petitioner alleged that as a result of receiving an influenza ("flu") vaccine on or about September 14, 2012, she developed a peripheral neuropathy which lasted for more than six months. On February 23,

---

[1] Because this decision contains a reasoned explanation for the undersigned's action in this case, the undersigned intends to post this ruling on the website of the United States Court of Federal Claims, in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 note (2012)(Federal Management and Promotion of Electronic Government Services).  As provided by Vaccine Rule 18(b), each party has 14 days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy."  Vaccine Rule 18(b).

[2] The National Vaccine Injury Compensation Program is set forth in Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755, codified as amended, 42 U.S.C. §§ 300aa-1 to -34 (2012) (Vaccine Act or the Act). All citations in this decision to individual sections of the Vaccine Act are to 42 U.S.C.A. § 300aa.

2017, the undersigned issued a decision awarding compensation to petitioner based on the parties' stipulation. ECF No. 66.

On March 7, 2017, petitioner filed a motion for fees and costs. Petitioner's ("Pet'r's") Motion ("Mot."). ECF Nos. 70-71. Petitioner requests attorneys' fees in the amount of $77,801.50 and attorneys' costs in the amount of $34,343.34, for a total attorneys' fees and costs request of $112,144.84. Pet'r's Mot. at 2. She also requests reimbursement for $4,970.95 in out-of-pocket costs. Id. at 3. On March 14, 2017, respondent filed a response to petitioner's motion. Respondent's ("Resp's") Response ("Resp."). ECF No. 72. Respondent "respectfully recommend[ed] that the Chief Special Master exercise her discretion and determine a reasonable award for attorneys' fees and costs." Resp's Resp. at 2. Petitioner's motion for attorneys' fees and costs is now ripe for review.

Under the Vaccine Act, a special master shall award reasonable attorneys' fees and costs for any petition that results in an award of compensation. 42 U.S.C. §§ 300aa-15(e)(1). In the present case, petitioner was awarded compensation pursuant to a joint stipulation agreement. Therefore, petitioner is entitled to an award of reasonable fees and costs.

For the reasons discussed below, the undersigned awards petitioner $4,970.95 for out-of-pocket costs. She also awards $76,017.00 in attorneys' fees and $32,968.34 in attorneys' costs, for a total attorneys' fees and costs award of $108,985.34.

## I. Reasonable Attorneys' Fees

The Federal Circuit has approved use of the lodestar approach to determine reasonable attorneys' fees and costs under the Vaccine Act. Avera v. Sec'y of Health & Human Servs., 515 F.3d 1343, 1349 (Fed. Cir. 2008). Using the lodestar approach, a court first determines "an initial estimate of a reasonable attorneys' fee by 'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'" Id. at 1347-58 (quoting Blum v. Stenson, 465 U.S. 886, 888 (1984)). Then, the court may make an upward or downward departure from the initial calculation of the award based on other specific findings. Id. at 1348.

Counsel must submit fee requests that include contemporaneous and specific billing records indicating the service performed, the number of hours expended on the service, and the name of the person performing the service. See Savin v. Sec'y of Health & Human Servs., 85 Fed. Cl. 313, 316-18 (Fed. Cl. 2008). Counsel should not include in their fee requests hours that are "excessive, redundant, or otherwise unnecessary." Saxton v. Sec'y of Health & Human Servs., 3 F.3d 1517, 1521 (Fed. Cir. 1993) (quoting Hensley v. Eckerhart, 461 U.S. 424, 434 (1983)). It is "well within the special master's discretion to reduce the hours to a number that, in [her] experience and judgment, [is] reasonable for the work done." Id. at 1522. Furthermore, the special master may reduce a fee request *sua sponte*, apart from objections raised by respondent and without providing petitioners notice and opportunity to respond. See Sabella v. Sec'y of Health & Human Servs., 86 Fed. Cl. 201, 209 (Fed. Cl. 2009). A special master need not engage in a line-by-line analysis of petitioner's fee application when reducing fees. Broekelschen v. Sec'y of Health & Human Servs., 102 Fed. Cl. 719, 729 (Fed. Cl. 2011). Just as "[t]rial courts routinely use their prior experience to reduce hourly rates and the number of hours claimed in attorney fee requests . . . [v]accine program special masters are also entitled to use

their prior experience in reviewing fee applications." Saxton, 3 F.3d at 1521 (citing Farrar v. Sec'y of Health & Human Servs., 1992 WL 336502 at * 2-3 (Cl. Ct. Spec. Mstr. Nov. 2, 1992)).

### a. Reasonable Hourly Rates

Petitioner's counsel, Ms. Roquemore, submitted hourly rates of $355.00 for 2013; $365.00 for 2014 and 2015; and $400.00 for 2016 and 2017. Pet'r's Mot., Exhibit ("Ex.") 2 at 1-92. She requests paralegal hourly rates of $125.00 for 2013 through 2015; and $135.00 for 2016 and 2017. These rates are within the ranges established in McCulloch v. Sec'y of Health & Human Servs., No. 09-293V, 2015 WL 5634323 at *19 (Fed. Cl. Spec. Mstr. Sept. 1, 2015). They have been awarded by other special masters. See, e.g., Davis v. Sec'y of Health & Human Servs., No. 14-978V, 2017 WL 656304 at *2 (Fed. Cl. Spec. Mstr. Jan. 23, 2017); Taylor v. Sec'y of Health & Human Servs., No. 14-861V, 2016 WL 5390169 at *7 (Fed. Cl. Spec. Mstr. Feb. 17, 2016); Raicevic v. Sec'y of Health & Human Servs., No. 14-554V, 2016 WL 5362695 (Fed. Cl. Spec. Mstr. Aug. 31, 2016). The undersigned agrees that these rates are reasonable and should be awarded in this case.

### b. Reduction of Billable Hours

Petitioner requests compensation for 178.1 hours expended by Ms. Roquemore and 86.4 hours expended by her paralegal(s). Pet'r's Mot., Ex. 2. While petitioner is entitled to an award of attorneys' fees and costs, the undersigned finds that it is appropriate to reduce or deny compensation for certain billing entries. It is well established that billing for clerical and other secretarial work is not permitted in the Vaccine Program. Rochester v. United States, 18 Cl. Ct. 379, 387 (1989) (denying an award of fees for time billed by a secretary and finding that "[these] services . . . should be considered as normal overhead office costs included within the attorneys' fee rates"); Mostovoy v. Sec'y of Health & Human Servs., No. 2-10V, 2016 WL 720969, *5 (Fed. Cl. Spec. Mstr. Feb. 4, 2016).

In the present case, petitioner's counsel's billing sheets contain numerous entries that are best characterized as administrative time. For example, Ms. Roquemore billed at least 2.9 hours for reviewing her calendar and corresponding with the court, respondent, and petitioner's experts for the purposes of scheduling status conferences and a hearing.[3] Ms. Roquemore's paralegal billed at least 2.7 hours for downloading ECF filings, which Ms. Roquemore then billed separately to review.[4] The paralegal billed at least 1.9 hours to "draft fee application monthly summar[ies]."[5] These tasks may be necessary to the firm's continued operation, but they are clearly administrative in nature. Therefore, they will not be awarded. This results in a reduction of $1,784.50 from the fee award.

---

[3] Pet'r's Mot., Ex. 2 at 17-18, 56, 65, 76-78, 79.

[4] Pet'r's Mot., Ex. 2 at 14, 15, 18, 23, 26, 30, 34, 35, 40, 43, 52, 56, 60, 63, 67, 72, 74, 77, 79, 85, 89.

[5] Pet'r's Mot., Ex. 2 at 6, 9, 10, 11, 15, 17, 20, 23, 35, 37, 40, 43, 46, 49, 51.

### c. Reasonable Petitioner's and Attorneys' Costs

Like attorneys' fees, a request for reimbursement of costs must be reasonable. Perreira, 27 Fed. Cl. 29, 34 (Fed. Cl. 1992). Petitioner states that she personally incurred $4,970.95 in costs related to the prosecution of this claim. Pet'r's Mot. at 3. Petitioner's costs are for postage; obtaining medical records; filing the claim; paying a retainer of $2,000.00 to Dr. Lawrence Steinman; and paying a retainer of $2,500.00 to Dr. M. Eric Gershwin. Pet'r's Mot., Exs. 5, 6. The undersigned finds these costs to be reasonable and awards them in full.

Petitioner also requests $34,343.34 for costs incurred by her counsel. Pet'r's Mot. at 2. These costs are for postage; copying; obtaining medical records; Dr. Steinman's balance of $13,125.00; and Dr. Gershwin's balance of $20,500.00. Pet'r's Mot., Exs. 2, 4, 9, 16.

The undersigned finds that these costs are generally reasonable. However, as discussed below, she will adjust the requested hourly rate for Dr. Steinman, from $550.00 to $500.00 per hour.

### i. Reasonable Expert Costs

Like attorneys' fees, reasonable expert fees are determined using the lodestar method in which a reasonable hourly rate is multiplied by a reasonable number of hours. Caves v. Sec'y of Health & Human Servs., 111 Fed. Cl. 774, 779 (2013). To determine a reasonable rate for an expert, special masters have typically considered factors similar to the factors used in setting an hourly rate for an attorney. These factors include the expert's "area of expertise; the education and training required to provide [the expert] necessary insight; the prevailing rates for other comparably respected available experts; the nature, quality, and complexity of the information provided; [and] the cost of living in the expert's geographic area." Sabella v. Sec'y of Health & Human Servs., 86 Fed. Cl. 201, 206 (2009) (internal citations omitted). "Petitioner has the burden of providing the foregoing information concerning expert fees." Id.

### a. Dr. Steinman

Dr. Steinman is a board-certified neurologist who practices and teaches at Stanford University Hospital. Pet'r's Mot, Ex. 7 at 4-6. He earned his medical degree from Harvard Medical School in 1973. Id. He also has significant experience as an expert witness in the Vaccine Program.

Petitioner paid Dr. Steinman a $2,000.00 retainer on September 20, 2016. Pet'r's Mot., Ex. 5 at 3; Pet'r's Mot., Ex. 9 at 1. On October 28, 2016, Dr. Steinman began reviewing the case. Pet'r's Mot., Ex. 9 at 1. He reviewed over 100 exhibits and the reports of Dr. Leist and Dr. Gershwin and conducted independent research. Id. He completed his report on November 15, 2016. Id. On December 10, 2016, Dr. Steinman sent his invoice to petitioner's counsel. Id. The invoice states that he worked a total of 27.5 hours and that his hourly rate was $500.00 per hour (noting: "DOJ pays this rate for my work as an expert on their behalf in a current case captioned Neaman v. HHS"). Id. Therefore, his total fee in the case was $13,750.00. Id. Dr. Steinman deducted the retainer received from petitioner and requested that petitioner's counsel pay him the remaining $11,750.00.

On February 24, 2017, Dr. Steinman completed a "declaration" in which he requested an increased rate of $550.00 per hour. Pet'r's Mot., Ex.7 at 2. This raises his fee to $15,125.00, minus the $2,000.00 retainer, resulting in a remaining balance of $13,125.00. Id.[6]

In support of this increased rate, Dr. Steinman states that he has consistently received between $450.00 and $500.00 for his work in Vaccine Program cases since 2012. Id. Dr. Steinman asserts that this rate is "below the hourly rate of colleagues of mine with similar years of practice." Id. As an example, he names Dr. Andrew Saxon, who graduated from Harvard Medical School in 1972 and is an immunologist at UCLA School of Medicine. Id. In 2011, Dr. Saxon requested $600.00 per hour for consultation and $800.00 per hour for testimony regarding "whether Botox is more likely than not to cause central nervous system diseases as may have occurred in the two plaintiffs." Pet'r's Mot., Exhibit 12 at 12, 14.[7] And in 2015, Dr. Saxon requested $660.00 per hour for consultation and $850.00 per hour for testimony about whether oral administration of a vitamin would support or enhance the immune system. Pet'r's Mot., Exhibit 13 at 11.[8] Dr. Steinman asserts that he is practicing in the same geographic area as Dr. Saxon; he has the same cost of living; and he is equally or more qualified. Pet'r's Mot., Exhibit 6 at 5. Additionally, Dr. Steinman has "contributed to the Vaccine Program substantially… by researching specific mechanisms of molecular mimicry of various vaccine injuries to various vaccines almost to the extent of showing 'with certainty' how a vaccine can cause various injuries." Id.[9] For these reasons, Dr. Steinman asserts that he is now entitled to an increased rate of $550.00 per hour. Petitioner's counsel restates these points in the motion for fees and costs. Pet'r's Mot. at 11-16.

After careful consideration and review of the information submitted, the undersigned will not increase Dr. Steinman's rate and will instead award him $500.00 per hour. The undersigned and other special masters have previously found this to be a reasonable rate for Dr. Steinman. See, e.g., Daniel v. Sec'y of Health & Human Servs., No. 10-745V, 2016 WL 7785955 (Fed. Cl. Spec. Mstr. Dec. 21, 2016); Pentcholov v. Sec'y of Health & Human Servs., No. 14-414V, 2016 WL 2197389 (Fed. Cl. Spec. Mstr. April 29, 2016); Brown v. Sec'y of Health & Human Servs., No. 09-426V, 2012 WL 952268 (Fed. Cl. Spec. Mstr. Feb. 29, 2012). Indeed, Dr. Steinman originally requested this rate for his work in this case. Pet'r's Mot., Ex. 9 at 1.

---

[6] Petitioner's motion adopts this increased rate. It requests "[r]eimbursement of Dr. Steinman's expert fees and costs in the total amount of $15,125.00" and that "Dr. Steinman previously received a $2,000.00 retainer leaving a $13,125.00 balance." Pet'r's Mot at 2, n. 3.

[7] Ray v. Allergen, No. 3:10-CV-00136, 2011 WL 1675105 (E.D. Va.) (Expert Report and Affidavit filed on Jan. 13, 2011).

[8] Nilon v. Natural Immunogenics Corp., No. 3:12-CV-00930 (S.D. Cal.) (Expert Report dated January 2, 2015).

[9] He also cites a fee decision awarding $500.00 per hour to an obstetrician-gynecologist with significantly fewer years of experience, also located in California. Culligan v. Sec'y of Health & Human Servs., No. 14-318V (Fed. Cl. Spec. Mstr. March 31, 2016).

Dr. Steinman represents that his peers command higher rates for serving as expert witnesses. However, in the Vaccine Program, even the payment of $500.00 per hour is rare. See DiMatteo v. Sec'y of Health & Human Servs., No.10-566V, 2014 WL 1509320 at *8 (Fed. Cl. Spec. Mstr. Mar. 27, 2014) (stating that a doctor's hourly rate of $500.00 was "notably unusual" and should be reduced to $400.00). The undersigned has never awarded more than $500.00 per hour. See, e.g., Parker v. Sec'y of Health & Human Servs., No. 02-1553V, 2015 WL 4550111 (Fed. Cl. Spec. Mstr. June 3, 2015) (reducing the rate of Dr. Andrew Zimmerman, a qualified expert neurologist who obtained his medical degree from Columbia University in 1970, from $600.00 to $500.00 per hour). She is not prepared to award a higher rate at this time. Because the undersigned finds that Dr. Steinman is an accomplished neurologist, researcher and professor, as well as a qualified expert witness, it is reasonable to award him $500.00 per hour, resulting in a total fee of $13,750.00. Petitioner will be fully reimbursed for the retainer. Petitioner's counsel will be reimbursed for the remainder.

### b. Dr. Gershwin

Like Dr. Steinman, Dr. Gershwin frequently participates as an expert witness in the Vaccine Program. He obtained his medical degree from Stanford University in 1971. His specialty is clinical immunology. Pet'r's Mot., Ex. 14. He is board-certified in internal medicine, rheumatology, and in allergy-immunology. Id.

Petitioner personally paid $2,500.00 to retain Dr. Gershwin. Pet'r's Mot., Ex. 5; Pet'r's Mot., Ex. 16 at 2. Between August 2014 and December 2015, Dr. Gershwin spent a total of 46 hours to review the medical records, literature, and reports of Dr. Leist and Dr. Steinman; correspond with petitioner's counsel; write two expert reports; and review and edit petitioner's counsel's filings. Pet'r's Mot., Ex. 16 at 2-5. Dr. Gershwin also billed $500.00 per hour, resulting in a total fee of $23,000.00 for his work on the case. As petitioner initially paid the $2,500.00 retainer, petitioner's counsel is seeking the remaining $20,500.00.

The undersigned finds that it is also reasonable to award Dr. Gershwin $500.00 per hour in this case, based on his experience practicing and teaching medicine, his experience in the Vaccine Program, and the quality of his work in this case.

## II.     Conclusion

Based on all of the above, the undersigned finds that petitioner is entitled to the following award of reasonable fees and costs:

| | |
|---|---|
| Attorneys' Fees Requested | $77,801.50 |
| Reduction for Non-Reimbursable Administrative Time | -$ 1,784.50 |
| Attorneys' Fees Awarded | $76,017.00 |
| | |
| Attorneys' Costs Requested | $34,343.34 |
| Reduction to Dr. Steinman's Fees | -$ 1,375.00 |
| Attorneys' Costs Awarded | $32,968.34 |

| | |
|---|---|
| Total Attorneys' Fees and Costs Awarded | $108,985.34 |
| Petitioner's Costs Awarded | $4,970.95 |

**Accordingly, the undersigned awards the following:**

1) **A lump sum in the amount of $108,985.34, representing reimbursement for attorney's fees and costs, in the form of a check jointly payable to petitioner Ms. Joan Rosof and petitioner's attorney, Ms. Lisa Roquemore.**[10]

2) **A lump sum in the amount of $4,970.95, representing reimbursement for all out-of-pocket costs, in the form of a payable to petitioner Ms. Joan Rosof.**

In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of the Court **SHALL ENTER JUDGMENT** in accordance herewith.[11]

**IT IS SO ORDERED.**

**s/Nora Beth Dorsey**
Nora Beth Dorsey
Chief Special Master

---

[10] This amount is intended to cover all legal expenses incurred in this matter. This award encompasses all charges by the attorney against a client, "advanced costs," and fees for legal services rendered. Furthermore, § 15€(30 prevents an attorney from charging or collecting fees (including costs0 that would be in addition to the amount awarded herein. See generally Black v. Sec'y of Health & Human Servs., 924 F.3d 1029 (Fed. Cir. 1991).

[11] Pursuant to Vaccine Rule 11(a), entry of judgment is expedited by the parties' joint filing of notice renouncing the right to seek review.